# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br>    Plaintiff, <br><br> v. <br><br> **JAMES MICHAEL BRACERO-CRUZ**, <br>    Defendant. | CRIM. NO. 25-281 (ADC) |

## **REPORT AND RECOMMENDATION**

Before the Court is Defendant James Michael Bracero-Cruz's[1] ("Defendant" or "Mr. Bracero-Cruz") "Motion to Suppress Evidence and for a *Franks* Hearing" (the "Motion"). Docket No. 23. The Government filed a response in opposition to Defendant's Motion (the "Opposition"). Docket No. 29. The Defendant did not file a reply. The matter was referred to the undersigned for the holding of an "appropriate hearing and report and recommendation." *See* Docket No. 24.

In his Motion, the Defendant requests that the Court: 1) hold a *Franks* hearing to probe the veracity of Puerto Rico Police Bureau ("PRPB") Agent Jesús Sánchez-Zavala's ("Agent Sánchez-Zavala") affidavit in support of his application for a warrant to search the Defendant's residence (the "Affidavit"); and 2) "declare the search warrant void and suppress all the evidence as tainted fruit of constitutional violations." Docket No. 23 at 9. The challenged Affidavit, which purportedly accompanied the application for a search warrant, was not attached as an exhibit to the Defendant's Motion. Instead, the Defendant submitted only the search warrant authorized by the Honorable Jerry Negrón Marn, Municipal Court Judge for the Municipality of Fajardo, Puerto Rico (the Search Warrant"). The Search Warrant, however, included a *verbatim* quote of the content of the Affidavit. The Court will therefore refer to the Affidavit as quoted by Judge Negrón Marín.

---

[1] The caption of the case in the docket identifies the Defendant as James Michael "Bracero-Cruz." In his Statement Under Penalty of Perjury and in the caption of the Motion, however, he identified himself as James Michael "Cruz-Bracero." To avoid confusion, the Court will continue to identify him as he appears in the docket.

Case 3:25-cr-00281-ADC-MDM   Document 32   Filed 03/10/26   Page 2 of 14

*United States v. James Michael Bracero-Cruz*                                                                    Page 2
Crim. No. 25-281 (ADC)
_____

After reviewing the parties' written submissions and analyzing the applicable law, the Court **RECOMMENDS** that Defendant's Motion be **DENIED** without an evidentiary hearing, and that none of the evidence challenged be suppressed.

### I.   FACTUAL SUMMARY

The following Factual Summary is derived from relevant sections of the Affidavit as quoted *verbatim* in the Search Warrant and from the parties' respective filings. *See* Docket Nos. 23 and 29.

On May 20, 2025, Agent Sánchez-Zavala began his shift at approximately 5:30 a.m. at the Fajardo Drugs Division. Docket No. 30-1 at 2. During his shift, Agent Sánchez-Zavala was approached by Sergeant Edgardo Díaz-Soto, who assigned him a confidential report (No. 2025-022) to investigate. *Id.* The confidential report stated that an individual named "James Bracero-Cruz," described as a white male of medium build, with bulky hair and a tattoo on his neck, standing approximately 5'8" tall, was armed and had been seen firing shots in front of his residence in a wooded area in the Quebrada Vuelta Ward, at 15 Luis M. Cintrón Street, No. 424, in Fajardo, Puerto Rico. *Id.* The residence was described as a wooden structure with a zinc gable roof, painted gray and terracotta. *Id.*

At approximately 2:30 p.m. that afternoon, Agent Sánchez-Zavala set out to begin his investigation to corroborate the factual details provided in the confidential report. *Id.* He had been assigned an unmarked vehicle, a set of binoculars, and a portable radio to conduct surveillance. *Id.* After locating the residence at the address described in the confidential report, he positioned himself at a vantage point that allowed him to see the front of the house. *Id.* He confirmed that the residence matched the description in the confidential report and he observed a white Toyota Corolla, bearing a license plate number ending in "733," parked in front of the house. *Id.*

At approximately 3:15 p.m., Agent Sánchez-Zavala observed a white male matching the description of the Defendant arrive at the residence on foot. *Id.* The individual was described as weighing approximately 225 lbs., standing 5'7" tall, with bulky brown hair and a beard, dressed in cartoon-patterned pajamas and flip-

Case 3:25-cr-00281-ADC-MDM  Document 32  Filed 03/10/26  Page 3 of 14

*United States v. James Michael Bracero-Cruz* Page 3
Crim. No. 25-281 (ADC)
_____

flops, with a sweater draped over his shoulder. *Id.* Using his binoculars, Agent Sánchez-Zavala observed a black pistol grip protruding from the Defendant's left pocket. The Defendant then entered the residence through the balcony and Agent Sánchez-Zavala briefly lost sight of him. *Id.*

Approximately one hour later, at 4:15 p.m. a white Toyota Corolla with nickel-plated luxury rims arrived in front of the residence *Id.* A few seconds later, the Defendant exited the residence dressed in all black attire; long black pants, a black sweater, a black cap and black sneakers. *Id.* In his right hand, he carried a clear plastic bag containing a white powder that, based on Agent Sánchez-Zavala's training and experience, appeared to be cocaine. *Id.* The agent saw the Defendant place the clear bag in his front right pants pocket, walk to the side of the house, and return wearing a black waist bag. He then left through the pedestrian gate and walked towards the driver's side of the white Toyota. He took out the clear plastic bag from his pocket and handed it to the female driver through the driver's side door. After a brief conversation, the Defendant walked around the front of the white Toyota and entered the passenger side and drove off with the female driver. *Id.*

The next day, May 21, 2025, Agent Sánchez-Zavala continued his surveillance at the residence. *Id.* At approximately 11:07 a.m., Agent Sánchez-Zavala observed the Defendant standing at the balcony door wearing long black pants and no shirt. *Id.* He again saw the grip of a pistol protruding from the front of the Defendant's waistband, and he had a cell phone in his hand. *Id.* When the Defendant looked directly towards Agent Sánchez-Zavala's position, the agent retreated for his own safety and returned to the Fajardo Drug Division to draft an affidavit summarizing the results of his surveillance. *Id.*

On May 22, 2025, Agent Sánchez-Zavala executed the Affidavit before the Honorable Judge Negrón Marín. *Id.* at 3. After reviewing the Affidavit, Judge Negrón Marín found probable cause and issued a warrant to search the Defendant's residence looking for evidence of violations of Puerto Rico's Controlled Substances Act and Weapons Act. *Id.*

Case 3:25-cr-00281-ADC-MDM   Document 32   Filed 03/10/26   Page 4 of 14

*United States v. James Michael Bracero-Cruz*  Page 4
Crim. No. 25-281 (ADC)
_____

On May 28, 2025, at approximately 5:00 a.m., agents from the Puerto Rico Police Bureau, Fajardo District ("PRPB Agents"), executed the search warrant. Docket No. 29 at 5. The PRPB Agents conducted a "knock and announce" and found the residence initially unoccupied. *Id.*

PRPB Agent Néstor Espinosa-Rodríguez ("Agent Espinosa-Rodríguez") reported that, shortly thereafter, the Defendant arrived and identified himself as James Michael Bracero Cruz. *Id.* The individual stated that he resided there with his mother and his wife. *Id.* The PRPB Agents executed the search in his presence. *Id.*

Inside the residence, agents seized the following:

- One (1) black 9mm Polymer P-80 pistol, model PF940C;
- Two (2) black Glock magazines — one with a capacity of thirty-one (31) rounds of 9mm ammunition and another with a capacity of fifty (50) rounds of 9mm ammunition;
- Forty-two (42) rounds of 9mm ammunition;
- One (1) black digital scale;
- Drug paraphernalia (small plastic baggies);
- One (1) black drug ledger containing names and numbers; and
- Five hundred fourteen dollars ($514.00) in U.S. currency.

*Id.*

From the Defendant's person, agents seized one (1) black iPhone containing a SIM card, bearing no. 8901260608756322737, and one (1) red iPhone enclosed in a red and black case. *Id.* at 6.

Upon Agent Espinosa-Rodríguez's seizure of the firearm, the Defendant stated he did not know who owned it. *Id.* Agent Espinosa-Rodríguez then read the Defendant his *Miranda* rights, placed him under arrest and transported him to the PRPB Fajardo Drugs Division for processing. *Id.* Upon arrival, the Defendant was again advised of his *Miranda* rights, which he acknowledged but chose not to waive. As a result, the custodial interview was immediately terminated. Subsequently, the case was referred to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for federal review and prosecution.

Case 3:25-cr-00281-ADC-MDM   Document 32   Filed 03/10/26   Page 5 of 14

*United States v. James Michael Bracero-Cruz*                                                                                          Page 5
Crim. No. 25-281 (ADC)
_____

On June 18, 2025, a federal grand jury returned a one-count indictment charging the Defendant with being a felon in possession of ammunition, in violation of Title 18, *United States Code*, Section 922(g)(1). *See* Docket No. 1.

## II.   LEGAL DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and generally requires law enforcement officers to secure a warrant supported by probable cause prior to conducting a search or seizure. *United States v. Rigaud*, 664 F.3d 169, 173 (1st Cir. 2012) (citing *United States v. Paneto*, 661 F.3d 709, 713 (1st Cir. 2011)). Probable cause to search a residence exists when the totality of the circumstances suggests that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (citing *United States v. Hicks*, 575 F.3d 130, 136 (1st Cir. 2009) (internal quotation marks omitted)).

Information supporting probable cause is set out in an affidavit submitted with the application for a search warrant. Although "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant," that presumption may be refuted during what is known as a *Franks* hearing. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

To obtain a *Franks* hearing a party must first make two "substantial preliminary showings:" (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2) the falsehood or omission was necessary to the finding of probable cause. *See id.* at 155–56; *Hicks*, 575 F.3d at 138; *United States v. Castillo*, 287 F.3d 21, 25 (1st Cir. 2002). In other words, the false statement or the omission must be shown to be material to the ultimate decision to issue the search warrant. Failure to make a showing as to *either* element dooms a party's hearing request.

*United States v. James Michael Bracero-Cruz*                                                                                                   Page 6
Crim. No. 25-281 (ADC)
_____

In the event that a hearing is granted and "at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side [or the omitted material included], the affidavit's . . . content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. *Id.* at 171. Moreover, a defendant's own denial of the statement which he purports to be false, without more, is insufficient to satisfy, and falls well short of, the "substantial preliminary showing necessary to justify a *Franks* hearing." *United States v. Moon*, 802 F.3d 135, 150-51 (1st Cir. 2015). *See also*, *United States v. Southard*, 700 F.2d 1, 10 (1st Cir. 1983) (upholding rejection of *Franks* hearing where district court found appellants' flat denials of gambling-related conversations insufficient to meet the "substantial preliminary showing" requirement).

For an evidentiary hearing to be warranted, the defendant must allege a deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. The movant must point out specifically the portion of the challenged affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. *Moon*, 802 F.3d at 150-51. Affidavits, sworn statements, or otherwise reliable statements of witnesses challenging the veracity of averments in the affidavit should be furnished, or their absence satisfactorily explained. *Id.* Allegations of negligence or innocent mistakes are insufficient. *Id.* Critically, the deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant. *Id.* Furthermore, as previously stated, the defendant's general denials about the factual assertions by the affiant are insufficient to meet the standard for entitlement to a hearing. *Id.*

Case 3:25-cr-00281-ADC-MDM Document 32 Filed 03/10/26 Page 7 of 14

*United States v. James Michael Bracero-Cruz* Page 7
Crim. No. 25-281 (ADC)
_____

If these requirements are met, and if, after setting aside the material that is the subject of the alleged falsity or reckless disregard, there remains sufficient content in the affidavit to support a finding of probable cause, no hearing is required. *Id.* Conversely, if the remaining content is insufficient, the defendant is entitled to a *Franks* hearing under the Fourth and Fourteenth Amendments. *Id.*[2]

### A. Defendant's Motion falls well short of a "substantial preliminary showing" to justify a hearing.

Attached as Exhibit 2 to the Motion is a Statement Under Penalty of Perjury (the "Statement") provided by the Defendant pursuant to Title 28 U.S.C. § 1746. In the Statement, the Defendant declares *verbatim* that:

1. During May of 2025 my residence was House # 424, 16 street, Luis M. Cintron Lots, Quebrada Vuelta Ward, Fajardo, Puerto Rico (*Casa # 424, Calle 16, Parcelas Luis M. Cintron, Barrio Quebrada Vuelta, Fajardo, Puerto Rico*).

2. It has come to my attention that a police officer alleged that he saw me:

   a. On Tuesday, May 20 2025, possessing a firearm in and near my residence in Fajardo, Puerto Rico;

---

[2] The Government argues in its Opposition that the good faith exception could be a basis for upholding the search of the Defendant's residence and deny his Motion. *See* Docket No. 29 at 16-18. This argument is unavailing in a *Franks* motion analysis. To the extent that a court finds that a search warrant is procured through falsity or a material misrepresentation by an affiant, that finding would preclude a determination that the search warrant proponents could benefit from a good faith reliance on that unduly procured warrant. "[T]he good faith exception does not allow law enforcement authorities to rely on an error of their own making." *United States v. Morales-Pérez*, Crim. 23-300 (FAB), Docket No. 122 at 23 (D.P.R. Aug. 25, 2025) (citing Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.3(f) (6th ed.)). *United States v. Leon*, 468 U.S. 897, 923 (1984) (holding that good faith exception does not apply when "magistrate was misled by . . . information that the affiant knew was false or would have known was false except for his reckless disregard of the truth" (emphasis added)); *United States v. Vigeant*, 176 F.3d 565, 573 (1st Cir. 1999) (holding *Leon* good faith exception inapplicable when affiant recklessly omitted numerous material facts undermining affidavit's persuasiveness, including indicia of confidential informant's unreliability); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) (holding that *Leon* good faith exception "does not protect searches by officers who fail to provide all potentially adverse information to the issuing judge, and for that reason, it does not apply here").

Case 3:25-cr-00281-ADC-MDM  Document 32  Filed 03/10/26  Page 8 of 14

*United States v. James Michael Bracero-Cruz*  Page 8
Crim. No. 25-281 (ADC)
_____

    b. On Tuesday, May 22, 2025, possessing and transferring to another person a plastic bag filled with cocaine in and near my residence in Fajardo, Puerto Rico; and

    c. On Wednesday, May 21, 2025, possessing a firearm in my residence in Fajardo, Puerto Rico.

3. I never possessed any type of firearm in or near my residence in Fajardo, Puerto Rico on any of the aforementioned dates.

4. I never possessed cocaine or any other controlled substance in or near my residence in Fajardo, Puerto Rico on any of the aforementioned dates.

5. I make this statement for the limited purpose of establishing a substantial preliminary showing that the affidavit supporting the search warrant which led to the charges against me contains false statements which render it invalid.

**WHEREFORE**, I subscribe this unsworn statement under penalty of perjury on January 30, 2025.

                                            <u>s/ James Michael Cruz-Bracero</u>
                                            James Michael Cruz-Bracero

Docket No. 23-2. (Emphasis added). For the reasons that follow, the Court finds that the Defendant's Statement falls well short of a "substantial preliminary showing" required to justify a *Franks* hearing.

In *United States v. Moon*, 802 F.3d 135, the First Circuit rejected a similar effort to obtain a *Franks* hearing based on a defendant's generalized denial of the facts recited in the warrant affidavit. There, the defendant, Terrance Moon ("Moon"), was convicted of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). His conviction stemmed from search warrants issued for his person and for an apartment located at 99 Ormond Street in Boston, Massachusetts. In the supporting affidavit, the affiant–detective stated that, based on information from a confidential informant ("CI") who had previously purchased heroin from Moon, the Boston Police Department conducted surveillance of three recent controlled purchases by this CI from Moon, including one purchase within the "last seventy two

Case 3:25-cr-00281-ADC-MDM Document 32 Filed 03/10/26 Page 9 of 14

*United States v. James Michael Bracero-Cruz* Page 9
Crim. No. 25-281 (ADC)
_____

hours." During the most recent transaction, Moon was observed driving a green Mercedes registered to Sherrica Hendricks, his longtime girlfriend, who resided at 99 Ormond Street, Apartment # 1, in Mattapan, Massachusetts.

Moon sought to undermine the affidavit by asserting, in general terms, that he was not in Boston on the dates identified in the affidavit. In a sworn statement submitted in support of his suppression motion, Moon averred that he did not sell heroin to anyone in the Boston area during the three days preceding and including February 4, 2011—the date the search warrants were issued—and that he spent most of his time in Worcester, Massachusetts during the first week of February 2011. He argued that these denials, when combined with American Automobile Association ("AAA") records reflecting a request for a tow of the green Mercedes referenced in the warrant materials, demonstrated that he could not have been in Boston for at least one of the controlled buys described in the affidavit.

On appeal, the First Circuit concluded that the district court did not clearly err in finding that Moon's proffer failed to amount to a "substantial" showing of falsity. The court explained that:

> [t]he factual gap in Moon's attempt to show the affidavit's inaccuracy—and thus its knowing or reckless falsity—cannot be filled by his own denial that he sold heroin in Boston within the relevant period. That disclaimer constitutes no more than a conclusory and unsupported allegation that falls well short of the 'substantial preliminary showing' necessary to justify a *Franks* hearing."

*Id.* at 149-50.

Similarly, in *United States v. Southard*, 700 F.2d at 10, the First Circuit observed that flat, self-serving denials of allegations merely "set up a swearing contest" and, standing alone, do not establish a substantial possibility of perjury by the affiant. *Id.* (holding that bare denials of the facts stated in a law enforcement affidavit "do not demonstrate a substantial possibility of affiant perjury" and therefore do not satisfy the "substantial preliminary showing" requirement).

Case 3:25-cr-00281-ADC-MDM   Document 32   Filed 03/10/26   Page 10 of 14

*United States v. James Michael Bracero-Cruz*  Page 10
Crim. No. 25-281 (ADC)
_____

As in *Moon* and *Southard*, the Defendant here offers nothing beyond generalized denials of the Affidavit's factual allegations. In paragraphs 3 and 4 of the Statement, he broadly denies possessing firearms or controlled substances at his residence during the specified dates. Critically, the Statement is devoid of any external corroboration—such as surveillance video, cell site or GPS data, documentary records, or third party testimony—that would affirmatively contradict Agent Sánchez Zavala's sworn account. Consequently, the Statement does not demonstrate that Agent Sánchez-Zavala included any "knowingly and intentionally" false statement in the Affidavit, as required under *Franks v. Delaware* and its First Circuit progeny. *See Franks*, 438 U.S. at 155–56; *United States v. Tanguay*, 787 F.3d 44, 46, 53 (1st Cir. 2015).

The Defendant alternatively contends that, even if he cannot show that Agent Sánchez-Zavala knowingly and intentionally made a false statement, he is still entitled to a hearing upon a showing that the agent acted with reckless disregard for the truth. To establish reckless disregard for the truth in this context, a defendant must show that the affiant "in fact entertained serious doubts as to the truth" of the challenged allegations. *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)); *see also Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994) (adopting similar standard). Recklessness may be inferred "from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Williams*, 737 F.2d at 602.

In this case, the Defendant identifies three grounds on which he claims Agent Sánchez-Zavala either actually "entertained serious doubts as to the truth" of the allegations in the Affidavit or, at a minimum, should have had "obvious reasons to doubt" their veracity. The Court finds each of these specific challenges to the agent's veracity unpersuasive.

First, the Defendant argues that Agent Sánchez-Zavala acted recklessly by failing to investigate whether the Defendant possessed a valid Puerto Rico firearms license. This contention is unavailing. As courts applying *Franks* have repeatedly

Case 3:25-cr-00281-ADC-MDM   Document 32   Filed 03/10/26   Page 11 of 14

*United States v. James Michael Bracero-Cruz*                                                                                Page 11
Crim. No. 25-281 (ADC)
_____

recognized, "failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth." *United States v. Tanguay*, 787 F.3d at 53. An officer's duty of further inquiry is triggered only when he has knowledge of an obvious and unexplored reason to doubt the truthfulness of the information being presented to the magistrate.

In Puerto Rico, the open carrying of a firearm is prohibited irrespective of whether the individual holds a license. *See United States v. Avilés Vega*, 783 F.3d 69, 73 (1st Cir. 2015); *United States v. Bula Cartagena*, Crim. No. 24-124-2 (RAM), 2024 WL 2091542, at *1 (D.P.R. May 9, 2024). Thus, whether the Defendant in fact possessed a firearms license is immaterial to the judge's probable cause evaluation if he was observed openly possessing a firearm outside his residence, which in this case he was. He was therefore under no duty to investigate further whether the Defendant possesses a valid firearms license.

In addition, independent of whether the Defendant was legally permitted to possess a firearm, the fact that Agent Sánchez-Zavala observed him in possession of a firearm in furtherance of a suspected drug transaction would independently supply probable cause for the issuance of a search warrant. Accordingly, Agent Sánchez-Zavala was under no obligation, for *Franks* purposes, to investigate whether the Defendant possessed a valid Puerto Rico firearms license, and his failure to do so does not amount to reckless disregard for the truth.

Second, the Defendant contends that Agent Sánchez-Zavala must have fabricated his account in the Affidavit because, in the Defendant's view, no "experienced" drug dealer would carry a "large" transparent bag of cocaine openly, where it could be seen by anyone in the close-knit neighborhood. *See* Docket No. 23 at 5. This argument fares no better than the first. Although the agent described the clear plastic bag containing suspected cocaine as "large," the record reflects that it was not so large as to preclude it from fitting into the Defendant's pants pocket. Indeed, the Court credits the Government's position that the bag was "large" only in

Case 3:25-cr-00281-ADC-MDM    Document 32    Filed 03/10/26    Page 12 of 14

*United States v. James Michael Bracero-Cruz*  Page 12
Crim. No. 25-281 (ADC)
_____

comparison to the smaller distribution-size baggies of cocaine recovered pursuant to the warrant, and that its being characterized as "large" in the Affidavit does not, in any meaningful way, undermine the agent's veracity.

Third, the Defendant asserts that Agent Sánchez-Zavala could not have been truthful because, given the close-knit character of his neighborhood, Agent Sánchez-Zavala could not have conducted surveillance in front of the Defendant's house without being detected. Yet the Affidavit itself acknowledges that the Defendant ultimately discovered the agent's presence, forcing the agent to withdraw for safety reasons. That candid admission is consistent with the Defendant's description of an observant neighborhood and, if anything, enhances rather than detracts from Agent Sánchez-Zavala's credibility.

In sum, the Defendant has offered nothing beyond uncorroborated, general denials in an attempt to impeach Agent Sánchez-Zavala's sworn Affidavit. None of his arguments tend to show that Agent Sánchez-Zavala lied or otherwise acted with reckless disregard for the truth. These contentions are insufficient to overcome the strong presumption of validity that attaches to a warrant affidavit and do not satisfy the "substantial preliminary showing" required to warrant a *Franks* hearing. *See Franks*, 438 U.S. at 171–72; *Southard*, 700 F.2d at 10; *Moon*, 769 F.3d at 149–50.

### B. Defendant's attack on the confidential report also fails to support suppression of the evidence.

The Defendant further contends that "absent the false statements [in the Affidavit], there was no corroboration of the facts provided by the [confidential report]." (Docket No. 23 at 6-7). He argues that if the Court were to excise the challenged facts, the Search Warrant would be based solely on an uncorroborated confidential tip, and probable cause would be lacking. *See id.*

As previously discussed, the Defendant's challenge fails to satisfy his substantial preliminary showing that Agent Sánchez-Zavala lied or acted with reckless disregard for the truth. Consequently, there is no legal basis to excise any portion of the Affidavit. *See Franks*, 438 U.S. at 171-72.

Case 3:25-cr-00281-ADC-MDM   Document 32   Filed 03/10/26   Page 13 of 14

*United States v. James Michael Bracero-Cruz*  
Crim. No. 25-281 (ADC)

Page 13

_____

Furthermore, even if the Court were to credit the Defendant's factual denials—of not possessing a firearm nor narcotics—they do not, by themselves, impeach the Affidavit or establish that the Agent lacked a good-faith belief in the information presented to the issuing judge. The *Franks* inquiry is focused strictly on the affiant's veracity and state of mind at the time the warrant was sought; it does not provide a vehicle for a *de novo* trial on the underlying facts. *See United States v. Ranney*, 298 F.3d at 78. Therefore, even if the Defendant could prove he was unarmed on the day of the search, such evidence is immaterial to whether Agent Sánchez-Zavala entertained "serious doubts" as to the truth of his own observations during the prior surveillance period.

Because the Defendant has failed to impeach the Affidavit, the issuing court properly relied on the "totality of the circumstances" presented—including both the confidential report and the Agent's subsequent, independent corroboration of the Defendant's possession of a firearm and controlled substances. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Accordingly, the Affidavit provided a more than sufficient basis for the issuance of the Search Warrant.

### III. CONCLUSION

Given the totality of the circumstances, the Court finds that the Defendant failed to meet his substantial preliminary showing that Agent Sánchez-Zavala knowingly and intentionally, or with reckless disregard for the truth, made a false statement or omission in his Affidavit. The Court further finds that the Search Warrant was supported by probable cause related to violations of Puerto Rico's Controlled Substances Act and Weapons Act. The Court therefore **RECOMMENDS** that Defendant's Motion (Docket No. 23) be **DENIED** without holding an evidentiary hearing.

Case 3:25-cr-00281-ADC-MDM    Document 32    Filed 03/10/26    Page 14 of 14

*United States v. James Michael Bracero-Cruz* Page 14
Crim. No. 25-281 (ADC)
_____

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this **10th** day of March 2026.

                                        s/Marshal D. Morgan
                                        MARSHAL D. MORGAN
                                        UNITED STATES MAGISTRATE JUDGE